## A10A0388. FELICIANO v. THE STATE.
(690 SE2d 680)

BLACKBURN, Presiding Judge.

Following a jury trial, Armando Feliciano was convicted on one count of trafficking in cocaine[1] and on one count of operating a vehicle containing a secret compartment.[2] He appeals his conviction and the denial of his motion for new trial, arguing that the trial court erred in denying his motion for directed verdict of acquittal because the evidence was insufficient to prove that he possessed the cocaine. For the reasons set forth below, we affirm.

"On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction." (Punctuation omitted.) *Terry v. State*.[3] In reviewing the sufficiency of the evidence, "the evidence must be construed in a light most favorable to the verdict, and [Feliciano] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Dennis v. State*.[4] We do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[5]

So viewed, the record shows that on November 12, 2007, police officers were monitoring traffic on Interstate 85 in Banks County for the purpose of conducting a drug interdiction training session. At approximately 10:45 a.m., the officers observed a gold Toyota Camry following another vehicle too closely and thus initiated a traffic stop. After the vehicle had stopped, one of the officers approached and

---

[1] OCGA § 16-13-31 (a) (1) (C).
[2] OCGA § 16-11-112 (c) (1).
[3] *Terry v. State*, 293 Ga. App. 455 (667 SE2d 109) (2008).
[4] *Dennis v. State*, 294 Ga. App. 171 (669 SE2d 187) (2008).
[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

asked the driver to exit the vehicle. As the driver complied, the officer noticed that he was perspiring, that his hands were shaking, that he was breathing heavily, and that he was avoiding eye contact. The officer also noticed that a passenger was in the back seat of the vehicle and that the vehicle's interior did not contain any luggage or extra clothing.

Upon the officer's request, the driver produced a North Carolina driver's license, which indicated that his name was Daniel Delavega. At that time, the officer told his partner to run a computer check on the driver's license and the vehicle's tags. The officer explained to Delavega that he had been pulled over for following another vehicle too closely and then questioned Delavega regarding his destination, the owner of the vehicle, and the name of his passenger. In response, Delavega told the officer that he was going to see his uncle in Atlanta for a few days and that his passenger, Fernando, owned the vehicle that he was driving. He also informed the officer that he worked at an automobile repair shop in North Carolina.

After speaking with Delavega for a few minutes, the officer walked toward the rear of the vehicle and asked the passenger for his driver's license, which indicated that his name was Armando Feliciano and that he also resided in North Carolina. In response to the officer's questions, Feliciano stated that he also worked at the same automobile repair shop in North Carolina as Delavega and that he was going to Atlanta to visit family. In contrast to Delavega's story, Feliciano told the officer that Delavega did not have family in Atlanta. Feliciano also told the officer that he (Feliciano) owned the vehicle, but several minutes later, he claimed that the vehicle was actually owned by the automobile repair shop where he worked.

Based on Delavega's nervousness and the two men's contrasting stories about their travel plans, the officer suspected that Delavega and Feliciano were involved in criminal activity. At the same time, the officer's partner informed him that the computer check on the vehicle's tags indicated that the vehicle was registered to a Sandra Diaz and that the tags had been revoked. Consequently, the officer asked both Delavega and Feliciano for their consent to a search of the vehicle, which they provided. Immediately upon opening the vehicle's door, the officer smelled the odor of "Bondo," which is an automobile body filler. This indicated to the officer that the vehicle possibly contained a hidden compartment. The officer's suspicions became stronger upon looking underneath the vehicle and observing that the gas tank appeared to have been modified.

As the officer continued searching the vehicle, a K-9 unit arrived on the scene. Almost immediately, the trained dog alerted the officers to the presence of drugs toward the rear of the passenger side of the vehicle near the gas tank. Thereafter, Delavega and Feliciano were

placed in the back seat of the officer's patrol vehicle, and their vehicle was taken to a nearby automobile repair shop. At the shop, the officers conducted a more thorough search of the vehicle and eventually discovered a hidden compartment near the gas tank. Inside the hidden compartment, the officers found $130,000 in cash bundles and nearly one kilogram of cocaine.

Delavega and Feliciano were jointly indicted on one count of trafficking in cocaine and on one count of operating a vehicle containing a secret compartment. At trial, the investigating officers testified regarding the traffic stop and search of the vehicle. In addition, a forensic chemist from the GBI State Crime Lab testified that the contraband found in the vehicle's hidden compartment constituted 998 grams of cocaine with a purity level of 59.4 percent. At the close of the State's case, Feliciano moved for a directed verdict of acquittal, which the trial court denied.

During the defense's case, Feliciano testified that he and Delavega were traveling to Atlanta to visit Delavega's relatives and to go to nightclubs. He also testified that he initially told the investigating officers that the vehicle was his but explained that he did so because he felt responsible for the vehicle, which had been borrowed from the automobile repair shop where he and Delavega worked. Feliciano further maintained that he was not aware that the vehicle contained a hidden compartment, the cash, or the cocaine. At the trial's conclusion, the jury found Delavega and Feliciano guilty on both counts of the indictment. Subsequently, Feliciano filed a motion for new trial, which the trial court denied. This appeal followed.

In his sole enumeration of error, Feliciano contends that the trial court erred in denying his motion for directed verdict of acquittal on the trafficking in cocaine charge. Specifically, he argues that the evidence was insufficient to prove that he knowingly possessed the cocaine, as required by OCGA § 16-13-31 (a) (1). We disagree.

"Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing." (Citation and punctuation omitted.) *Jackson v. State.*[6] A finding of constructive possession cannot rest upon the person's spatial proximity to the object. *Gillis v. State.*[7] See *Mitchell v. State.*[8] However, "[a]s long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact

[6] *Jackson v. State*, 284 Ga. App. 619, 620 (1) (644 SE2d 491) (2007).
[7] *Gillis v. State*, 285 Ga. App. 199, 200 (1) (645 SE2d 674) (2007).
[8] *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997).

regarding constructive possession remains within the domain of the trier of fact." (Punctuation omitted.) *Wright v. State*.[9]

"In cases involving contraband found in automobiles, the [S]tate is generally entitled to an evidentiary presumption that the owner or driver of the automobile is in constructive possession of the contraband." *Mora v. State*.[10] Here, there was some evidence indicating that Feliciano owned or controlled the vehicle in which the cocaine was found. In fact, Feliciano initially told the investigating officers that the vehicle belonged to him before changing his story and asserting that the vehicle belonged to the repair shop. Additionally, the fact that Delavega, as the driver, had equal access to the vehicle is inconsequential. Both Delavega and Feliciano were charged in the same indictment with jointly trafficking in cocaine, "[a]nd equal access provides no defense where, as here, the evidence shows that the person who had equal access was in joint constructive possession of the contraband." *Crenshaw v. State*.[11] Thus, evidence existed for the jury to find that Feliciano was guilty of trafficking in cocaine beyond a reasonable doubt. See *Garcia v. State*[12] (defendant's admission to officer that he owned the vehicle in which contraband was found was sufficient to support jury's guilty verdict despite the fact that defendant was not the registered owner).

Furthermore, "[i]t has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband." *Fernandez v. State*.[13] See also *Larochelle v. State*.[14] Indeed, OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." Here, that Feliciano knew that the vehicle in which he was riding had a hidden compartment that contained the cocaine and cash could be inferred from the circumstances. Delavega and Feliciano gave conflicting stories about the ownership of the vehicle and their travel plans, including whom they were visiting in Atlanta and how long they were staying. "A jury could infer that one or both were lying and that these lies evidenced guilty knowledge." *Fernandez*, supra, 275 Ga. App. at 154-155 (2). See *Taylor v. State*.[15] Accordingly, the evidence was sufficient to support the jury's verdict beyond a

---

[9] *Wright v. State*, 279 Ga. App. 299 (1) (630 SE2d 774) (2006).

[10] *Mora v. State*, 292 Ga. App. 860, 861 (1) (666 SE2d 412) (2008).

[11] *Crenshaw v. State*, 248 Ga. App. 505, 507 (1) (546 SE2d 890) (2001).

[12] *Garcia v. State*, 293 Ga. App. 422, 425 (2) (667 SE2d 205) (2008).

[13] *Fernandez v. State*, 275 Ga. App. 151, 154 (2) (619 SE2d 821) (2005).

[14] *Larochelle v. State*, 219 Ga. App. 792, 797 (6) (466 SE2d 672) (1996).

[15] *Taylor v. State*, 263 Ga. App. 420, 422 (1) (587 SE2d 791) (2003).

reasonable doubt that Feliciano knowingly possessed the cocaine concealed in the vehicle's hidden compartment. See *Fernandez*, supra, 275 Ga. App. at 155 (2).

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED FEBRUARY 11, 2010.

*Mary Erickson*, for appellant.
*James B. Smith, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.